UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MATTHEW AVITABILE; FIREARMS POLICY
COALITION; and FIREARMS POLICY FOUNDATION,

                                       **Plaintiffs,**

     -against-                            **Civil Case No. 1:16-cv-1447**
                                                  **(DNH/CFH)**

ANDREW M. CUOMO, in his Official Capacity as
Governor of the State of New York, ERIC SCHNEIDERMAN,
In his Official Capacity as Attorney General of New York,
LT. COL. GEORGE BEACH in his Official Capacity as
Superintendent of the New York State Police and JAMES
SACKET, in his Official capacity as District Attorney of
Schoharie County, New York,

                                    **Defendants.**

---

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT DA SACKET'S
## MOTION TO DISMISS PURSUANT TO FRCP 12(b)

---

                                   LEMIRE, JOHNSON & HIGGINS, LLC
                                   Attorneys for Defendant, Sacket
                                   2534 Route 9 – P.O. Box 2485
                                   Malta, New York 12020
                                   Tel:    518-899-5700

Gregg T. Johnson, Esq., of Counsel
April J. Laws, Esq. of Counsel

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ........................................................................................2

LEGAL ANALYSIS................................................................................................3

A.    Standard of Review Under Rule 12(b)......................................................3

LEGAL ARGUMENT .............................................................................................4

POINT I  -   PLAINTIFFS' CLAIMS AGAINST DA SACKET
            ARE NOT RIPE FOR ADJUDICATION ............................................4

POINT II -   ANY ADVOCACY MADE BY DA SACKET WOULD BE
            CLOAKED BY ABSOLUTE PROSECUTORIAL IMMUNITY .........6

POINT III -  DA SACKET AS A STATE ACTOR IS IMMUNE FROM
            SUIT UNDER THE ELEVENTH AMENDMENT ...............................7

POINT IV -   PLAINTIFFS FAIL TO STATE A CLAIM FOR WHICH
            RELIEF CAN BE GRANTED AGAINST DA SACKET,
            AS PLAINTIFFS ARE UNABLE TO SHOW THAT NEW YORK'S
            "STUN GUN" LAW VIOLATES THE SECOND AMENDMENT .................8

CONCLUSION.......................................................................................................9

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allard v. Allard,*
   2016 N.Y. App. Div. LEXIS 8155 (N.Y. App. Div. 3d Dep't Dec. 8, 2016) ...........................5

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009)...........................................................................................................3, 4

*Baez v. Hennessy,*
   858 F.2d at 77 ...............................................................................................................................7

*Buckley v. Fitzsimmons,*
   509 U.S. 259 (1993)......................................................................................................................6

*Caetano v. Massachusetts,*
   577 U.S. ___, 136 S. Ct. 1027 (2016)......................................................................10, 11, 12

*Church of St. Paul & St. Andrew v. Barwick,*
   67 N.Y.2d 510 (N.Y. 1986) .......................................................................................................5

*City of New York v. Bob Moates' Sport Shop, Inc.,*
   253 F.R.D. 237 (E.D.N.Y. 2008)..............................................................................................9

*Community Watersheds Clean Water Coalition, Inc. v. New York State Dept. of*
   *Envtl. Conservation,*
   134 A.D.3d 1201 (N.Y. App. Div. 3d Dep't 2015) ................................................................5

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,*
   191 F.3d 198 (2d Cir. 1999)......................................................................................................5

*District of Columbia v. Heller,*
   554 U.S. 570 (2008)........................................................................................................8, 9, 11

*Ford v. Reynolds,*
   316 F.3d 351 (2d Cir. 2003).......................................................................................................7

*Heller v. District of Columbia,*
   698 F. Supp. 2d 179 (D.D.C. 2010) .......................................................................................10

*I. L. F. Y. Co. v. Temporary State Housing Rent Com.,*
   10 N.Y.2d 263 (N.Y. 1961) .....................................................................................................12

*Imbler v. Pachtman,*
    424 U.S. 409 (1976).................................................................................................6, 7

*Kachalsky v. County of Westchester,*
    701 F.3d 81 (2d Cir. 2012)......................................................................................8, 10

*Kalina v. Fletcher,*
    522 U.S. 118 (1997).....................................................................................................6

*LaValle v. Hayden,*
    98 N.Y.2d 155 (N.Y. 2002) .......................................................................................12

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010).....................................................................................................8

*Michaels v. Greenwood Lake Police Dept.,*
    387 F.Supp.2d 361 (S.D.N.Y 2005)............................................................................8

*Murphy v. New Milford Zoning Comm'n,*
    402 F.3d 342 (2d Cir. 2005)......................................................................................4, 5

*N.Y. State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82 v.*
    *Cuomo,*
    64 N.Y.2d 233 (N.Y. 1984) .........................................................................................5

*Nordyke v. King,*
    644 F.3d 776 (9th Cir. 2011) .....................................................................................10

*People v Buchholz,*
    53 Misc. 3d 563 (N.Y. City Crim. Ct. 2016) ...........................................................12

*People v. Epton,*
    19 N.Y.2d 496 (N.Y. 1967) .......................................................................................12

*People v. Smith,*
    89 Misc. 2d 789 (N.Y. App Term, 2d Dep't 1977) ..................................................12

*Phelps v. Kapnolas,*
    308 F.3d 180 (2d Cir. 2002).........................................................................................3

*Schultz Mgmt. v. Bd. of Stds. & Appeals,*
    103 AD2d 687 (N.Y. App. Div. 1st Dep't 1984).....................................................12

*United States v. Laurent,*
    861 F. Supp. 2d 71 (E.D.N.Y. 2011) ..........................................................................9

*United States v. Marzzarella,*
    614 F.3d 85 (3d Cir. 2010)........................................................................................10

*United States v. Masciandaro,*
    638 F.3d 458 (4th Cir. 2011) ................................................................................10

*United States v. White,*
    593 F.3d 1199 (11th Cir. 2010) .............................................................................10

*United States v. Yancey,*
    621 F.3d 681 (7th Cir. 2010) ................................................................................10

*Valenti v. Massapequa Union Free Sch. Dist.,*
    2010 U.S. Dist. LEXIS 10076 (E.D.N.Y. 2010) ...................................................3

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) .............................................................................................10

*Ying Jing Gan v. City of New York,*
    996 F.2d 522 (2d Cir. 1993) ...................................................................................7

**Statutes**

F.R.C.P. Rule 12(b) ................................................................................................1, 3

N.Y. Penal Law § 265.00 .......................................................................................2, 3

N.Y. Penal Law § 265.01 ................................................................................... *passim*

N.Y. Penal Law § 265.20 ..........................................................................................2

**Constituional Provisions**

U.S. CONST. amend. I .................................................................................................9

U.S. CONST. amend. II ......................................................................................*passim*

U.S. CONST. amend. XI .........................................................................................7, 8

N.Y. CONST. .............................................................................................................12

## PRELIMINARY STATEMENT

Defendant, James Sacket, in his Official capacity as District Attorney of Schoharie County, New York, (hereinafter referred to as "DA Sacket"), by and through his counsel (Lemire, Johnson & Higgins, LLC), submit this memorandum in support of the DA Sacket's Rule 12(b) motion to dismiss Plaintiffs' First Amended Complaint (Dkt. No. 12) in its entirety, as against DA Sackett.

Plaintiffs, Matthew Avitabile (hereinafter "Avitabile"), Firearms Policy Coalition (hereinafter "FPC") and Firearms Policy Foundation (hereinafter "FPF")(or collectively referred to as "Plaintiffs"), filed a First Amended Complaint for Declaratory and Injunctive Relief on December 20, 2016, advancing the following claims as against DA Sacket: 1) DA Sacket "in his official capacity…has a duty 'to conduct all prosecution for crimes and offenses cognizable by the courts' of Schoharie County" (Dkt. No. 12 ¶7); 2) pursuant to §1983, Plaintiffs claim that it would be unlawful and/or unconstitutional for DA Sacket to enforce New York's ban on private individuals (such as Avitabile) from obtaining a "stun gun" for personal protection (*Id.* at ¶¶59-60); and 3) pursuant to §1983, Plaintiffs claim that it would be unlawful and/or unconstitutional for DA Sacket to prosecute Avitabile should he obtain a "stun gun" for personal protection (*Id.*).

Plaintiffs seek the following relief against DA Sacket: 1) an injunction barring DA Sacket from enforcing New York's ban of the acquisition, possession, carrying or use of "stun guns" (or other electronic arms)(*see*, N.Y. Penal Law §265.01); and 2) monetary damages associated with the lawsuit.  As against the remaining Defendants, Plaintiffs seek an Order declaring N.Y. Penal Law §265.01 unconstitutional and unenforceable.

What is strikingly absent from the Amended Complaint are any factual allegations that, as a state actor, DA Sacket took any affirmative actions (criminal prosecution or other advocacy) in enforcing any state laws (including N.Y. Penal Law §265.01) against Avitabile.  Moreover,

the Amended Complaint makes absolutely no claims that DA Sacket enforced (or could enforce) any laws of New York (including N.Y. Penal Law §265.01) against FPC or FPF, both of which are noted to be non-profit public benefit organizations with no true nexus to New York (Dkt. No. 12).  Therefore, as a matter of law, Plaintiffs' First Amended Complaint must be dismissed in its entirety as against the DA Sacket.

## STATEMENT OF FACTS

The Plaintiffs in this case are: 1) Avitabile, a U.S. citizen, who resides in Schoharie County (Dkt. No. 12 ¶ 1); 2) FPC a non-profit organization that focuses on Second Amendment rights issues (*Id.* at ¶2); and 3) FPF a non-profit organization that focuses on Second Amendment rights issues (*Id.* at ¶ 3).  Avitabile claims that he is a member of both the FPC and FPF (Dkt. No. 12-1 ¶2).  Although Avitabile has not carried out his alleged desire to do so, he seeks to purchase, "own, and in appropriate circumstances, carry a stun gun or Taser" (*Id.* at ¶¶ 3 and 5). Avitabile has not purchased a "stun gun," allegedly due to New York's law prohibiting the use of same by public citizens (*Id.* at ¶ 6).

New York divides electronic incapacitation devices (i.e., "stun guns") into two categories: 1) an electronic dart gun (the purpose of which is to momentarily stun, knock out or paralyze a person by passing an electrical shock to such person by means of a dart or projectile); and 2) an electronic stun gun (the purpose of which is to stun, cause mental disorientation, knock out or paralyze a person by passing a high voltage electrical shock to such person), N.Y. Penal Law § 265.00.  In New York, it is illegal for a public citizen to possess a "stun gun," and a person found in possession of same can be charged with criminal possession of a weapon in the fourth degree, N.Y. Penal Law §§ 265.01, 265.20.  New York Penal Law § 265.00 likewise makes it unlawful for a public citizen to possess the following items, among others: switchblade

2

knife, gravity knife, pilum ballistic knife, metal knuckle knife, chukka stick and/or kung fu star (*Id.*).

## LEGAL ANALYSIS

**A.     Standard of Review Under Rule 12(b)**

Rule 12(b)(6) provides that a cause of action shall be dismissed if a Complaint fails "to state a claim upon which relief can be granted," *Id.*  While a "court must accept the material facts alleged in the Complaint as true and construe all reasonable inferences in the plaintiff's favor" in reviewing a motion to dismiss (*Phelps v. Kapnolas*, 308 F.3d 180, 184 [2d Cir. 2002] [citations omitted]), only a Complaint that states a plausible claim for relief can survive, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The United States Supreme Court's ruling in *Ashcroft v. Iqbal* is critical to Movant's instant motion to dismiss pursuant to F.R.C.P. Rule 12(b).  First, the Supreme Court in *Ashcroft v. Iqbal* made clear that in order to state a § 1983 claim against a government official, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Id.* at 1948 (emphasis added).  "Government officials may not be held liable for. . . conduct of their subordinates…," *Id.* at 1948.  Thus, while the Court is constrained to credit the well-pled factual allegations contained in Plaintiff's Complaint, each municipal official has the right to dismissal under Rule 12(b) when the Complaint fails to detail their culpable actions and the Constitution deprivation that allegedly resulted from such actions, *Iqbal, supra.*; *Valenti v. Massapequa Union Free Sch. Dist.*, 2010 U.S. Dist. LEXIS 10076, 25-27 (E.D.N.Y. Feb. 5, 2010)

It is clear that Plaintiffs' First Amended Complaint is insufficient regarding the requirements of a pleading against DA Sacket since it provides no allegations of any state action

taken by DA Sacket and merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action [which] will not do,'" *Ashcroft*, 129 S. Ct. at 1949. The Supreme Court in *Ashcroft* concluded "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" *Id.* Like the defendants in *Ashcroft*, DA Sacket is entitled to dismissal of Plaintiffs' First Amended Complaint since it fails to plead any facts - much less sufficient facts - to state a claim for purported or unlawful state action by DA Sacket, *Id.* at 1954.

## LEGAL ARGUMENT

### POINT I

### PLAINTIFFS' CLAIMS AGAINST DA SACKET ARE NOT RIPE FOR ADJUDICATION

It is undisputed that the First Amended Complaint does not allege that DA Sacket took any action against Plaintiffs, much less in of his capacity as District Attorney for Schoharie County. As a matter of law and fact, DA Sacket has not taken any action that precludes, prevents or denies Avitabile the opportunity to obtain and/or possess a "stun gun." Thus, as a matter of law and public policy, none of Plaintiffs' claims against DA Sacket are ripe.

As the Second Circuit has recognized, "[r]ipeness is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority," *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). "Determining whether a case is ripe generally requires [the Court] to 'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration,'" *Id.* The fitness of issues for judicial review requires "a weighing of the sensitivity of the issues presented and whether there exists a need for further factual development," whereas the hardship to the parties requires the court to "gauge the risk and severity of injury to a party that will result if the

4

exercise of jurisdiction is declined," *Id.* Although the ripeness doctrine does not require "'a futile gesture as a prerequisite for adjudication in federal court,'" *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999), *quoting, Williams v. Lambert*, 46 F.3d 1275, 1280 (2d Cir. 1995), conclusory or unsupported allegations of futility will not suffice.

In New York, the well-settled law is that a request for injunctive relief or a declaratory judgment is premature if the harm to the applicant is contingent upon events that may never occur, *N.Y. State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82 v. Cuomo*, 64 N.Y.2d 233 (N.Y. 1984); *Church of St. Paul & St. Andrew v. Barwick*, 67 N.Y.2d 510 (N.Y. 1986); *Allard v. Allard*, 2016 N.Y. App. Div. LEXIS 8155, *3 (N.Y. App. Div. 3d Dep't Dec. 8, 2016)("[w]here the harm sought to be enjoined is contingent upon events which may not come to pass, [a] claim to enjoin the purported hazard is nonjusticiable as wholly speculative and abstract); *Community Watersheds Clean Water Coalition, Inc. v. New York State Dept. of Envtl. Conservation*, 134 A.D.3d 1201, 1204 (N.Y. App. Div. 3d Dep't 2015) ("[a]s plaintiffs' causes of action necessarily are dependent upon future events that may never come to pass, we find that their claims are entirely speculative and, hence, are not justiciable").

The anticipated harm claimed by Plaintiffs is that DA Sacket *might* seek to charge, *might* indict and/or *might* prosecute Avitabile should he purchase and/or obtain a "stun gun." However, it is undisputed that Avitabile has not sought to, or has he undertaken, any unlawful act pursuant to PL § 265.01, nor has DA Sacket charged or expressed a desire to charge Avitabile under this statute. It is of course axiomatic that DA Socket, like any prosecutor, enjoys broad prosecutorial discretion in deciding which apparent crimes to prosecute. Moreover, since the prosecution of Avitabile pursuant to PL § 265.01 remains a possibility should Avitabile complete his desire to obtain a "stun gun," it is undisputed that Avitabile has not yet done so.

5

Therefore, the "harm" to Avitabile is entirely speculative at this point, and contingent upon two events that may never occur: 1) Avitabile's possession of a "stun gun"; and 2) DA Sacket's prosecution of Avitabile for violations of PL § 265.01. Therefore, and for the foregoing reasons, DA Sacket's motion to dismiss must be granted since this case is not ripe for adjudication as against DA Sacket.

**POINT II**

**ANY ADVOCACY MADE BY DA SACKET WOULD BE
CLOAKED BY ABSOLUTE PROSECUTORIAL IMMUNITY**

Regardless of whether or not Avitabile obtained a "stun gun," was charged in violation of PL § 265.01 and/or adjudicated by the Schoharie County District Attorney's office, DA Sacket would nonetheless be entitled to absolute prosecutorial immunity based upon the allegations of the First Amended Complaint.

It is well established that "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution" (*Imbler v. Pachtman*, 424 U.S. 409, 410 [1976]), "is immune from a civil suit for damages under § 1983," *Id.* at 431 ("The Courts of Appeals…are virtually unanimous that a prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties"); *see, also, Kalina v. Fletcher*, 522 U.S. 118 (1997) (such a prosecutor "is not amenable to suit [for damages] under § 1983"); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)("acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity"). The rationale for conferring absolute immunity in such circumstances is that "the public trust of the prosecutor's office would suffer if he were constrained in making every decision by the

6

consequences in terms of his own potential liability in a suit for damages," *Imbler*, *supra.*, at 424-25.

Here, Plaintiffs' hypothetical allegations admit that DA Sacket would be acting solely in his capacity as District Attorney. Therefore, as a matter of law, DA Sacket is absolutely immune from Plaintiffs' for all allegations made against him in the First Amended Complaint.

**POINT III**

**DA SACKET AS A STATE ACTOR IS IMMUNE FROM
SUIT UNDER THE ELEVENTH AMENDMENT**

The First Amended Complaint does not allege that DA Sacket took any action against Plaintiffs, much less out of his capacity as District Attorney for Schoharie County. In fact, the First Amended Complaint specifically states that DA Sacket is being sued "in his official capacity as District Attorney of Schoharie County, New York" (*see*, Dkt. No. 12). It is axiomatic that, since any prosecution and/or advocacy that DA Sacket would undertake for the State of New York would be in his capacity as a state actor, the Eleventh Amendment's sovereign immunity would bar any relief seeking monetary damages.

The Eleventh Amendment "bars the award of money damages against state officials in their official capacities," *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). This is because "[t]o the extend that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state," *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). It has been established by the Second Circuit Court of Appeals that "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the state not the county," *Baez v. Hennessy*, 858 F.2d at 77, *citing, McGinley v. Hynes*, 51 N.Y. 2d 116, 123 (N.Y. 1980). In this case, Plaintiffs' claims are all premised upon

7

*New York's* Penal Code – not any County Law or County policy. Further, "[i]n representing the

State of New York, the D.A. is protected by the Eleventh Amendment," *Michaels v. Greenwood*

*Lake Police Dept.*, 387 F.Supp.2d 361, 366 (S.D.N.Y 2005), *citing, Maier v. Philips, supra.*

      Therefore, since Plaintiffs have neither alleged that DA Sacket took any actions against

them, nor that any of the alleged actions would be outside of his capacity as district attorney, to

the extent Plaintiffs' Section 1983 claim seeks money damages against DA Sacket, those claims

must be dismissed as a matter of law.

**POINT IV**

**PLAINTIFFS FAIL TO STATE A CLAIM FOR WHICH
RELIEF CAN BE GRANTED AGAINST DA SACKET,
AS PLAINTIFFS ARE UNABLE TO SHOW THAT NEW YORK'S
"STUN GUN" LAW VIOLATES THE SECOND AMENDMENT**

      While it is axiomatic that a District Attorney must uphold the laws of the State of New

York, Plaintiffs cannot plausibly allege that N.Y. Penal Law §265.01 violates the Second

Amendment.  The Second Amendment confers an individual right to keep and bear arms

specifically for the purpose of self-defense, *District of Columbia v. Heller*, 554 U.S. 570, 628

(2008) ("the inherent right of self-defense has been central to the Second Amendment right.");

*Id.* at 630 (describing self-defense as the "core" purpose of the Second Amendment); *McDonald*

*v. City of Chicago*, 561 U.S. 742 (2010).[1]  Only those laws and regulations that substantially

burden the right to keep and bear arms for the purpose of self-defense run afoul of the Second

Amendment, *Heller*, 554 U.S. at 595 ("The right was not unlimited, just as the First

Amendment's right of free speech was not...we do not read the Second Amendment to protect

---

[1] In *McDonald*, the Supreme Court struck down a Chicago law that banned handguns in the home.  However, *McDonald* also reaffirmed *Heller's* assurances that Second Amendment rights are far from absolute and that many longstanding firearm regulations are "presumptively lawful," *Id.* at 785.  The Court also noted that the doctrine of "incorporation does not imperil every law regulating firearms," *Id.*; *see, also, Kachalsky v. County of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012).

the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose."); *Id.* at 626 ("the right [to bear arms] was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.").

The right to self-defense in the home belongs to "law-abiding citizens for lawful purposes," *Heller*, 554 U.S. at 627. The Second Amendment does not prohibit government regulation of firearms outside of the home or limitations on ownership of certain firearms; nor does it prevent the government from limiting the use of firearms for specific purposes or by specific people, *United States v. Laurent*, 861 F. Supp. 2d 71 (E.D.N.Y. 2011). Second Amendment protections thus only extend to those weapons typically possessed for the purpose of lawful self-defense, *Heller*, 554 U.S. at 627. Similarly, the "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms" are "longstanding" and "presumptively lawful," *Heller*, 554 U.S. at 626-27; *see, also, City of New York v. Bob Moates' Sport Shop, Inc.*, 253 F.R.D. 237, 242 (E.D.N.Y. 2008) ("It cannot be concluded that *Heller* places in doubt all state and local control of guns required to protect citizens, particularly in urban communities....To transmutate *Heller* into an inhibition on long standing ancient...powers of the state to control nuisances, the power of the federal government to regulate firearms that flow through the stream of interstate commerce, and the power of the federal judiciary in diversity cases to enforce that state substantive law is almost inconceivable.").

Numerous Courts of Appeals have found that regulations which substantially burden the right to keep and to bear arms for the purpose of self-defense should receive intermediate

scrutiny, *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012) (upholding state law requiring applicants prove "proper cause" to obtain licenses to carry handguns for self-defense); *Nordyke v. King*, 644 F.3d 776, 786 (9th Cir. 2011)(when deciding whether a restriction…substantially burdens Second Amendment rights, we should ask whether the restriction leaves law-abiding citizens with reasonable alternative means for obtaining firearms sufficient for self-defense purposes); *United States v. Masciandaro*, 638 F.3d 458, 469-70 (4th Cir. 2011); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *see, also, Heller v. District of Columbia*, 698 F. Supp. 2d 179, 188 (D.D.C. 2010).  To evaluate the burden placed on a constitutional right by government regulation, courts determine whether the restriction leaves open sufficient alternative avenues for exercising that right, *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).   Applying intermediate scrutiny, courts have upheld a number of restrictions on gun ownership and possession, *see, e.g., Marzzarella*, 614 F.3d at 98 (upholding a federal ban on the transportation, receipt and possession of any firearm which has had the serial number removed because it was a "substantial or important…law enforcement interest in enabling the tracing of weapons via their serial numbers"); *see, also, United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010) (upholding statute prohibiting gun possession by illegal drug users); *United States v. White*, 593 F.3d 1199, 1205-06 (11th Cir. 2010) (holding that Second Amendment was not violated by statutory prohibition against possession of firearms by persons convicted of misdemeanor crime of domestic violence).

As it pertains to the applicability of "stun gun" regulations under the Second Amendment, the United States Supreme Court has issued only one ruling: *Caetano v. Massachusetts*, 577 U.S. ___, 136 S. Ct. 1027 (2016).   *Caetano* involved a challenge to a Massachusetts law prohibiting the private possession of stun guns.  There, the Supreme Court

10

rejected the three bases on which the Supreme Judicial Court of Massachusetts found that the Second Amendment did not extend to stun guns: (1) stun guns "were not in common use at the time of the Second Amendment's enactment"; (2) stun guns are "dangerous per se at common law and unusual" because they are "a thoroughly modern invention"; and (3) there was "nothing in the record to suggest that [stun guns] are readily adaptable to use in the military," *Caetano*, 136 S. Ct. 1027, 1028.  The Supreme Court rejected the first and second reasons - which it found to be the same reason - as "inconsistent with *Heller's* clear statement that the Second Amendment 'extends...to...arms...that were not in existence at the time of the founding,'" *Id.* 136 S. Ct. 1027, 1028 (*citing*, *District of Columbia v. Heller*, 554 U.S. at 582). The Court found that the third reason was similarly inconsistent with *Heller*, which "rejected the proposition 'that only those weapons useful in warfare are protected,'" *Id.* 136 S. Ct. 1027, 1028 (citing *Heller*, 554 U.S. at 624-25).

Importantly, *Caetano* did not alter, amend or overrule the Supreme Court's reasoning in *Heller*. *Caetano* merely reaffirmed that whether a weapon has a nexus to military unity is not the correct test; the correct test is whether that weapon is protected under the Second Amendment. Stated another way, in *Caetano*, the Supreme Court did not hold (as the First Amended Complaint suggests here) that a Massachusetts statute banning the possession of "stun guns" violated the Second Amendment.  Rather, the Supreme Court held that the reasons offered by the Supreme Judicial Court of Massachusetts in upholding the statute contradicted the Supreme Court's opinion in *Heller*.  As a result, the Supreme Court vacated the judgment of the Supreme Judicial Court of Massachusetts and the case was remanded for further proceedings.  Simply stated, the *Caetano* decision did not invalidate any state or local ban on "stun guns."

It is well-settled law in New York that "[s]tatutes are presumed valid and constitutional and the one challenging the statute has the burden of showing the contrary," *People v. Epton*, 19 N.Y.2d 496, 505 (N.Y. 1967) ("It must be assumed that the Legislature intended to enact a statute which was in harmony with the United States Constitution and the Constitution of the State of New York."). Additionally, there is "a further presumption that the Legislature has investigated for and found facts necessary to support the legislation," *I. L. F. Y. Co. v. Temporary State Housing Rent Com.*, 10 N.Y.2d 263, 270 (N.Y. 1961). The party challenging a statute, bears a heavy burden "of demonstrating the infirmity beyond a reasonable doubt, and only as a last resort will courts strike down legislative enactments on the ground of unconstitutionality," *Schultz Mgmt. v. Bd. of Stds. & Appeals*, 103 AD2d 687, 689 (N.Y. App. Div. 1st Dept. 1984) *quoting, Sgaglione v. Levitt*, 37 N.Y.2d 507, 515 (N.Y. 1975); *see, also, LaValle v. Hayden*, 98 N.Y.2d 155, 161 (N.Y. 2002) ("courts must avoid, if possible, interpreting a presumptively valid statute in a way that will needlessly render it unconstitutional."); *People v. Smith*, 89 Misc. 2d 789 (N.Y. App Term, 2d Dept. 1977) (when construing a statute, the court must, if possible, preserve its constitutionality.). Finally, "[c]ourts of first instance should only invalidate legislative enactments in the most clear and convincing cases," *People v Buchholz*, 53 Misc. 3d 563, 565 (N.Y. City Crim. Ct. 2016) quoting, *People v. Portnoy*, 140 Misc. 2d 945, 946 (N.Y. Crim Ct, Bronx County 1988).

In light of the foregoing and for reasons stated herein, the allegations of the First Amended Complaint fail to meet his heavy burden of demonstrating beyond a reasonable doubt that PL § 265.01 is unconstitutional.[2] Due to Plaintiff's failure to meet his heavy burden, this

---

[2] Plaintiff's heavy reliance upon *Caetano* is fatally flawed as a matter of law since the Massachusetts "stun gun" law was not struck down by the Supreme Court. In fact, subsequent to the Supreme Court's decision, all charges against

Court need not determine whether PL § 265.01 violates the Second Amendment right to keep and bear arms.

### CONCLUSION

WHEREFORE, it is respectfully requested that the Court: (a) dismiss Plaintiffs' Complaint against DA Sacket; and (b) grant such other and further relief in DA Sacket's favor as this Court deems just and proper.

Dated:          February 10, 2017

Respectfully submitted,

LEMIRE, JOHNSON & HIGGINS, LLC

By:    _____
       Gregg T. Johnson (506443)

---

Jaime Caetano were dropped by the State of Massachusetts. So the case is now terminated and the Massachusetts' "stun gun" statute remains viable.

13