UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MATTHEW AVITABILE,

                Plaintiff,

  -v-                                       1:16-CV-1447

LT. COL. GEORGE BEACH, in his
official capacity as Superintendent
of the New York State Police, and
JAMES SACKET, in his official
capacity as District Attorney of
Schoharie County, New York,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                            OF COUNSEL:

STAMBOULIEH LAW, PLLC            STEPHEN D. STAMBOULIEH, ESQ.
Attorneys for Plaintiff Matthew Avitabile
P.O. Box 4008
Madison, MS 39130

ALAN A BECK LAW FIRM              ALAN ALEXANDER BECK, ESQ.
Attorneys for Plaintiff Matthew Avitabile
2692 Harcourt Drive
San Diego, CA 92122

HON. ERIC T. SCHNEIDERMAN       MICHAEL G. MCCARTIN, ESQ.
New York State Attorney General       Ass't Attorney General
Attorneys for Defendant Lt. Col.
   George Beach
The Capitol
Albany, NY 12224

LEMIRE, JOHNSON LAW FIRM        GREGG T. JOHNSON, ESQ.
Attorneys for Defendant James Sacket  APRIL J. LAWS, ESQ.
2534 Route 9
Malta, NY 12020

EMERY CELLI BRINCKERHOFF          ILANN M. MAAZEL, ESQ.
   & ABADY LLP
Attorneys for Amicus Everytown for
   Gun Safety
600 Fifth Avenue, 10th Floor
New York, NY 10020

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

    Plaintiff Matthew Avitabile ("Avitabile" or "plaintiff") has filed this 42 U.S.C. § 1983 official-capacity action against defendants New York State Police Superintendent George Beach (the "Police Superintendent") and Schoharie County District Attorney James Sacket (the "District Attorney") seeking a declaration that New York State's blanket ban on the possession of stun guns and other electronic weapons violates the Second Amendment to the U.S. Constitution.[1]

    The Police Superintendent has answered the operative complaint. However, there are three motions pending. First, the District Attorney has moved to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), arguing that Avitabile's constitutional claim is not yet ripe or, in the alternative, that he is shielded from participation in this suit by various immunity principles. Second, plaintiff has moved under Rule 65 seeking a preliminary injunction against any continuing enforcement of the statewide ban. Third, "Everytown for Gun Safety," a gun violence prevention organization, has moved for leave to participate as amicus curiae.

---

[1] Avitabile's initial filings included additional named plaintiffs (two firearms advocacy groups) and defendants (Governor Andrew Cuomo and Attorney General Eric Schneiderman). However, the parties have since stipulated to the dismissal of the latter, while plaintiff has consented to the dismissal of the former. Therefore, these names have not been included in the caption and should be omitted from all future submissions.

The three motions have been fully briefed and oral argument was heard on March 24, 2017, in Utica, New York. Decision was reserved.

## II. BACKGROUND

Avitabile is a resident of Schoharie County, New York who "desires to purchase a stun gun or Taser for self-defense and other lawful purposes in his home" because he believes this kind of device would "minimize the likelihood that he would have to resort to deadly force in the event he was forced to defend himself or his home from a violent criminal attack." Am. Compl. ¶¶ 1, 44, 51.

According to Avitabile, stun guns and Tasers offer a number of material advantages over other less-lethal means of self-defense, such as sprays or contact weapons like knives or clubs. Am. Compl. ¶¶ 26-34 (detailing alleged disadvantages of other methods).[2]

However, the current state of New York law renders illegal the object of Avitabile's desire, since a person is guilty of fourth degree criminal possession of a weapon when he or she possesses, inter alia, any "electronic dart gun" or "electronic stun gun." N.Y. Penal Law § 265.01(1).

New York's penal law defines an "electronic dart gun" as "any device designed primarily as a weapon, the purpose of which is to momentarily stun, knock out or paralyze a person by passing an electrical shock to such person by means of a dart or

---

[2] Taser is the brand name of an "electronic dart gun" manufactured by Taser International, Inc., a company which seems to dominate the market for these devices. Am. Compl. ¶ 18; Avitabile Decl. ¶¶ 3, 5. The Taser device uses replaceable cartridges of compressed gas to fire two small probes attached to insulated, conductive wires. Am. Compl. ¶ 18. These probes penetrate an attacker's clothing and embed in the skin, sending an electrical charge through the wires that disrupts muscular control. Id. ¶ 21. In contrast, stun guns are direct contact weapons intended for use in close proximity. As plaintiff explains, however, a Taser can also be used as a "direct contact stun device in the event of a missed shot or in the event of multiple assailants." Am. Compl. ¶ 24.

projectile," § 265.00(15-a), and an "electronic stun gun" as "any device designed primarily as a weapon, the purpose of which is to stun, cause mental disorientation, knock out or paralyze a person by passing a high voltage electrical shock to such person," § 265.00(15-c).

As relevant here, the Police Superintendent bears responsibility for enforcing New York State's customs, policies, practices, and laws regarding stun guns and other electronic firearms, Am. Compl. ¶ 6, while the District Attorney is charged with the duty "to conduct all prosecutions for crimes and offenses cognizable by the courts" in Schoharie County, including crimes under New York Penal Law § 265.00 et seq. Id. ¶ 7.

### III. DISCUSSION

Before turning to Avitabile's request for a preliminary injunction, there are two threshold matters that must be resolved.

#### A. Amicus Curiae

First, Everytown has moved for leave to participate in this suit as amicus curiae "in support of the defendants' opposition to the plaintiffs' motion for a preliminary and/or permanent injunction."

The remaining parties have consented to Everytown's participation and an independent review of amicus's submission confirms that it satisfies the appropriate discretionary standard. Accordingly, Everytown's motion will be granted. See, e.g., Williams v. Conway, 236 F. Supp. 3d 554, 571 n.8 (N.D.N.Y. 2017) (explaining that the usual rationale for permitting an amicus submission is that it aids the court by offering insights not available from the parties).

## B. District Attorney's Motion to Dismiss

Second, the District Attorney offers three reasons he must be dismissed from this suit. According to him, Avitabile's constitutional claim is not yet ripe for adjudication because plaintiff fails to allege that he has yet purchased, attempted to purchase, or been prosecuted for possession of a Taser or stun gun.

"The ripeness doctrine is drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003) (internal quotation marks omitted). In other words, "the doctrine implicates two distinct conceptual jurisdictional criteria." Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 687 (2d Cir. 2013) (citing Simmonds v. INS, 326 F.3d 351, 356-57 (2d Cir. 2003)).

The District Attorney's argument appears grounded in the first of these jurisdictional criteria; i.e., *constitutional* ripeness. As the Second Circuit has explained, "the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing." Walsh, 714 F.3d at 688.

"Constitutional ripeness, in other words, is really just about the first Lujan factor—to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent' but instead 'conjectural or hypothetical.'" Walsh, 714 F.3d at 688 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

With this body of law in mind, the District Attorney's argument must be rejected. "Standing and ripeness are closely related doctrines that overlap most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical." N.Y. Civil Liberties Union v. Grandeau, 528 F.3d 122, 130 n.8 (2d Cir. 2008).

As Avitabile's opposition memorandum explains, the Supreme Court's decision in Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334 (2014), confirmed that a plaintiff has standing to bring a pre-enforcement challenge like the one at issue here under circumstances that render the threatened enforcement imminent, a state of affairs that exists where a plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Id. at 2342 (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)).

Some district courts in this Circuit have been reluctant to broadly apply the "more permissive" standing and ripeness rules bound up in this "credible threat of prosecution" standard. See Jones v. Schneiderman, 101 F. Supp. 3d 283, 289 n.4 (S.D.N.Y. 2014) (observing that this "standard has been applied predominantly to First Amendment lawsuits seeking to enjoin the prospective application of statutory prohibitions to protected speech"); see also Nation v. Tanner, 108 F. Supp. 3d 29, 33-34 (N.D.N.Y. 2015) (denying plaintiffs' motion to reconsider dismissal for lack of standing based on conclusion that only vague, generalized threats of future enforcement existed).

However, the Second Circuit has repeatedly determined that pre-enforcement challenges to criminal statutes, such as § 265.01, are cognizable provided the plaintiff's claim for relief does not rest wholly on a fear that is "imaginary or speculative." Knife Rights, Inc. v. Vance, 802 F.3d 377, 384 (2d Cir. 2015); cf. Cayuga Nation v. Tanner, 824 F.3d 321, 331 (2d Cir. 2016) (reversing dismissal for lack of standing where "there is reason to believe that the plaintiffs will be targets of criminal prosecution, and there has been no disavowal of an intention to prosecute those individuals").

- 6 -

Ripeness "is peculiarly a question of timing."  Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580 (1985).  In this case, there is no indication that the District Attorney has articulated any specific policy positions regarding enforcement of New York's stun gun ban.  Nor is there any indication that the District Attorney has made any specific statements that might be construed as targeting Avitabile's conduct in particular.

But Avitabile has publicly announced his own desire to purchase and possess such a weapon for self-defense purposes in his own home, Avitabile Decl. ¶¶ 5-6, conduct that would be likely to result in his prosecution under § 265.01.

And there is no question that it is the District Attorney who is charged with the duty "to conduct all prosecutions for crimes and offenses cognizable by the courts" in Schoharie County, where plaintiff resides.  See N.Y. County Law § 700.

Indeed, it is hard to imagine what, if any, additional conduct Avitabile might be required to engage in to trigger a more "credible" threat of prosecution short of actually committing the proscribed act.  Accordingly, plaintiff may pursue his claim at this time.

Nevertheless, the District Attorney argues he must still be dismissed from this suit because he is entitled to absolute prosecutorial immunity or, in the alternative, Eleventh Amendment immunity, from Avitabile's constitutional claim.  Plaintiff argues that, at best, these immunities would only shield the District Attorney from personal claims for *money* damages, which plaintiff states that he will waive.[3]

In support of this position, Avitabile points to Maloney v. Cuomo, 470 F. Supp. 2d 205, 208 (E.D.N.Y. 2007), a case in which the plaintiff challenged the portion of § 265.01 that

---

[3] The clear goal of the Amended Complaint is to secure a permanent injunction against the ban; any money damages claims are an afterthought.

- 7 -

criminalizes the possession of "nunchucks," a handheld weapon devised of two shorts sticks of equal length joined by a rope or chain.  There, Judge Arthur Spatt concluded the District Attorney remained a proper defendant for purposes of the plaintiff's request for injunctive relief because "[i]t is well established in New York that the district attorney, and the district attorney alone, should decide when and in what manner to prosecute a suspected offender."  Id. (emphasis omitted).

The District Attorney's second argument is also rejected.  Although absolute prosecutorial immunity would bar a § 1983 damages claim against the District Attorney in his *individual* capacity and Eleventh Amendment immunity might shield him from a § 1983 claim for money damages in his *official* capacity, the doctrine of Ex parte Young permits an official-capacity claim against him for prospective, injunctive relief to remedy an ongoing violation of federal constitutional law like the one alleged in this case.  See, e.g., Nolan v. Cuomo, 2013 WL 168674, at *11-12 & n.7 (E.D.N.Y. Jan. 16, 2013) (concluding that the Suffolk County District Attorney was proper party to plaintiff's official-capacity claims for injunctive relief).

Finally, the District Attorney argues Avitabile fails to state a plausible claim for relief against him under Rule 12(b)(6).  But as plaintiff points out in his opposition, the District Attorney's argument appears to conflate the ultimate standard of proof for plaintiff's underlying claim with the question properly asked on a motion to dismiss; that is, whether plaintiff has stated a "plausible" claim for relief.  Taking as true the allegations in the operative complaint, plaintiff's claim survives dismissal at this early stage.  Accordingly, the District Attorney's motion to dismiss will be denied.

## C. **Plaintiff's Motion for a Preliminary Injunction**

These initial conclusions leave for consideration Avitabile's request for a preliminary injunction, a form of relief that has been characterized as "an extraordinary remedy never awarded as of right." Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).

The party seeking preliminary relief must show:  "(1) a likelihood of irreparable harm; (2) either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction is in the public interest." Williams v. Conway, 236 F. Supp. 3d 554, 581 (N.D.N.Y. 2017) (quoting Gen. Mills, Inc. v. Chobani, LLC, 158 F. Supp. 3d 106, 115 (N.D.N.Y. 2016)).

Ordinarily, "the court's task when granting a preliminary injunction is [ ] to restore, and preserve, the status quo ante, i.e., the situation that existed between the parties immediately prior to the events that precipitated the dispute." Chobani, LLC, 157 F. Supp. 3d at 201 (quoting Asa v. Pictometry Int'l Corp., 757 F. Supp. 2d 238, 243 (W.D.N.Y. 2010)).

However, in cases like this one, where the movant is not seeking to restore the status quo ante but to affect government action taken in the public interest pursuant to a statutory or regulatory scheme, a heightened standard applies:  a preliminary injunction should issue only upon a particularly rigorous application of the "likelihood-of-success" standard. Silberberg v. Bd. of Elections of the State of N.Y., 216 F. Supp. 3d 411, 416 (S.D.N.Y. 2016); see also Stagg P.C. v. U.S. Dep't of State, 158 F. Supp. 3d 203, 208 (S.D.N.Y. 2016) (requiring a "clear or substantial" showing of a likelihood of success on the merits).

Ultimately, "[t]he party seeking the injunction carries the burden of persuasion to demonstrate, 'by a clear showing,' that the necessary elements are satisfied." Reckitt

Benckiser Inc. v. Motomco Ltd., 760 F. Supp. 2d 446, 452 (S.D.N.Y. 2011) (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).

**1.  Substantial Likelihood of Success on the Merits**

The Second Amendment to the U.S. Constitution provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.

In District of Columbia v. Heller, the Supreme Court concluded that "the inherent right of self-defense has been central to the Second Amendment right."  554 U.S. 570, 628 (2008).  Referring to a handgun as the "quintessential self-defense weapon," the Heller Court invalidated the District of Columbia's total ban on handgun possession in one's home.  Id. at 629.

Two years later, in McDonald v. Chicago, the Supreme Court determined that the "Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in Heller."  561 U.S. 742, 791 (2010); see also Kachalsky v. Cty. of Westchester, 701 F.3d 81, 89 (2d Cir. 2012) ("[T]he Second Amendment's protections, whatever their limits, apply fully to the states through the Fourteenth Amendment.").

These two Supreme Court decisions managed to upset an entire area of constitutional law without offering much in the way of guidance to the lower courts.  See, e.g., N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo, 804 F.3d 242, 253 (2d Cir. 2015) ("N.Y. State Rifle") (observing that "[n]either Heller nor McDonald . . . delineated the precise scope of the Second Amendment or the standards by which lower courts should assess the constitutionality of firearms restrictions"), cert. denied sub nom. Shew v. Malloy, 136 S. Ct. 2486 (2016).

Nevertheless, in an attempt to faithfully apply Heller and McDonald's mandate, the Second Circuit has developed a two-step approach to assessing the constitutionality of firearm restrictions.  N.Y. State Rifle, 804 F.3d at 254.  At the first step, a court must determine whether the regulated weapons fall within the protections of the Second Amendment.  Id. at 254-55.  If so, it must then decide and apply the appropriate level of constitutional scrutiny.  See id. at 254.

With respect to this first step, the Second Amendment protects only "the sorts of weapons" that are (a) "in common use" and (b) "typically possessed by law-abiding citizens for lawful purposes."  N.Y. State Rifle, 804 F.3d at 255 (citations omitted).

The "common usage" requirement is based on "an objective and largely statistical inquiry."  N.Y. State Rifle, 804 F.3d at 256.  For instance, in N.Y. State Rifle, the Second Circuit concluded that the parties' conflicting evidence supported, at minimum, a finding that the regulated weapon at issue (assault weapons in that case) were "owned in large numbers by law-abiding Americans."  Id. at 255.

In contrast, the "typical possession" requirement demands that a court look beyond statistics and to instead consider "broad patterns of use and the subjective motives of gun owners."  N.Y. State Rifle, 804 F.3d at 256.  For example, "[l]ooking solely at a weapon's association with crime" is "insufficient."  Id.  Rather, a court must "consider more broadly whether the weapon is 'dangerous and unusual' in the hands of law-abiding civilians."  Id.

With respect to the second step, the Second Circuit has instructed that courts should consider:  (a) "how close the law comes to the core of the Second Amendment right" and (b) "the severity of the law's burden on the right" in determining the appropriate level of scrutiny.  N.Y. State Rifle, 804 F.3d at 258.

As to the core issue, the Second Circuit has observed that "Second Amendment guarantees are at their zenith within the home." Kachalsky, 701 F.3d at 89.  As for the burden issue, the Circuit has held an "absolute prohibition" on a weapon creates a "serious encroachment" on the Second Amendment right.  N.Y. State Rifle, 804 F.3d at 259.  When these two circumstances are met, "some form of heightened scrutiny" is appropriate.  Id. at 260.

The question of what form this heightened scrutiny must take is also not entirely clear.  Courts elsewhere continue to suggest that strict scrutiny might be appropriate under some as-yet-unlitigated factual scenario.  See, e.g., Kolbe v. Hogan, 849 F.3d 114, 138 (4th Cir. 2017) (en banc) (suggesting strict scrutiny might be warranted in challenge to law or regulation severely burdening "the right of law-abiding, responsible citizens to use arms for self-defense in the home").

But district courts in this Circuit have continually chosen to apply "intermediate scrutiny to general challenges under the Second Amendment, even when reviewing statutes or laws that may restrict the possession of [weapons] in the home." Maloney v. Singas, 106 F. Supp. 3d 300, 311 (E.D.N.Y. 2015) (collecting cases).

For instance, in N.Y. State Rifle, the Second Circuit concluded intermediate scrutiny was appropriate where the gun-control legislation at issue left open numerous alternative ways for a citizen to lawfully acquire and possess a weapon for self-defense.  804 F.3d at 260.  Indeed, just a few months ago the Second Circuit flatly stated that intermediate scrutiny

applies to "laws implicating the Second Amendment."  Mishtaku v. Espada, 669 F. App'x 35 (2d Cir. 2016) (summary order).[4]

However, the particular merits of Avitabile's request make it unnecessary to definitively resolve the scrutiny question right now.  Plaintiff argues that the Supreme Court's recent opinion in Caetano v. Massachusetts, 136 S. Ct. 1027 (2016) (per curiam), confirms that the Second Amendment protects against a blanket ban on the in-home possession of a Taser or stun gun for the lawful purpose of self-defense.

Avitabile also points to a pair of post-Heller state court decisions emphasizing that the Second Amendment has been held to apply quite broadly outside the firearm context.  State v. DeCiccio, 315 Conn. 79 (Conn. 2014) (striking down Connecticut's ban on transporting "dirk knives" and "police batons" in motor vehicles because the ban makes it impossible for people to transport those weapons to their new homes); People v. Yanna, 297 Mich. App. 137 (Mich. Ct. App. 2012) (striking down Michigan's complete prohibition on Tasers and stun guns).

The Police Superintendent acknowledges the post-Heller state court decisions but responds that Caetano's holding did not go nearly so far.  According to him, the thin evidentiary record currently available simply does not permit the conclusion that Tasers and stun guns are "the sorts of weapons" that are (a) "in common use" and (b) "typically possessed by law-abiding citizens for lawful purposes."  According to the Police

---

[4] Intermediate scrutiny requires that the "fit between the challenged regulation [and the government interest] need only be substantial, not perfect."  N.Y. State Rifle, 804 F.3d 261.  In making this determination, courts afford "substantial deference to the predictive judgments of the legislature," while remaining mindful that the legislature is "far better equipped than the judiciary" to make sensitive public policy judgments.  Id.

Superintendent, Avitabile's motion should be denied and the parties should go to discovery to sort out these and other issues.

The Police Superintendent's argument is far more persuasive. To be sure, the Heller Court concluded that the Second Amendment "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." 554 U.S. at 582. But the Heller Court also readily recognized that "the right secured by the Second Amendment . . . . [is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626; see also id. at 623 ("[T]he Second Amendment right, whatever its nature, extends only to certain types of weapons.").

In Caetano, the Supreme Court vacated a petitioner's conviction for possession of a stun gun in violation of Massachusetts state law and remanded her case for further consideration of whether the Commonwealth's blanket ban on the possession of stun guns by private citizens ran afoul of her Second Amendment right in light of Heller and McDonald.

But as the Police Superintendent points out, the Caetano majority did not actually make any affirmative pronouncements about the continuing permissibility of the Massachusetts stun gun ban.[5]  136 S. Ct. at 1028. Instead, the Court simply rejected as inconsistent with its precedent the three reasons the lower court had offered for upholding the law. Id.

Equally important at this stage of the proceedings, the personal experience set out in Avitabile's affidavit is just one data point and does not, on its own, clearly establish that these

---

[5] In a concurrence, Justice Alito, joined by Justice Thomas, went into much greater detail, arguing that a weapon may not be banned "unless it is both dangerous and unusual." Caetano, 136 S. Ct. at 1031 (Alito, J., concurring) (emphases in original).

devices are "in common use today" or that their common use is for the "lawful purpose" of self-defense. Cf. Maloney, 106 F. Supp. 3d at 312 (declining to grant summary judgment where parties failed to offer empirical support for this issue).

Nor does the additional data cited by Avitabile—to the effect that New York is one of the few jurisdictions with blanket bans on stun gun possession—necessarily suffice to overcome New York's "substantial, indeed compelling, governmental interests in public safety and crime prevention." Kachalsky, 701 F.3d at 97.

Further, Avitabile's own affidavit details myriad other non-lethal or less-lethal devices that exist for in-home self-defense purposes, making it hard to conclude at this point that the stun gun ban effectively disarms individuals or substantially affects their ability to defend themselves. See N.Y. State Rifle, 804 F.3d at 260.

Of course, Avitabile's operative complaint (and his motion papers) extensively detail policy- or preference-based reasons why these alternatives are undesirable or otherwise inferior, but the relevance of these factors remains unclear given the unsettled nature of the existing law. Cf. Kolbe, 849 F.3d at 141 (rejecting the notion that the Second Amendment should apply to "each and every weapon deemed sufficiently popular").

After carefully considering the parties' briefing in light of the governing law, Avitabile has failed demonstrate a substantial likelihood of success on the merits of his claim sufficient to warrant the entry of a preliminary injunction at this time. Accordingly, plaintiff's motion will be denied.

### 2. Other Factors

In view of the above, the other three preliminary injunction factors need not be considered. See CollaGenex Pharm., Inc. v. IVAX Corp., 375 F. Supp. 2d 120, 135

(E.D.N.Y. 2005) ("[A] district court cannot use an exceptionally weighty showing on one of the other three factors to grant a preliminary injunction if a movant fails to demonstrate a likelihood of success on the merits.").

However, it is also noted that "[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiff's rights." Silber v. Barbara's Bakery, Inc., 950 F. Supp. 2d 432, 439 (E.D.N.Y. 2013) (citation omitted). Avitabile challenges legislative decision-making that has been on the books, in one form or another, since at least the 1970s.

## IV. CONCLUSION

The District Attorney's motion to dismiss will be denied.  Avitabile's motion for a preliminary injunction will also be denied.  Finally, to the extent plaintiff invites the Court to enter a final judgment on the merits using Rule 65(a)(2), that invitation is declined.

Therefore, it is

ORDERED that

1. Everytown for Gun Safety's motion to participate as amicus curiae is GRANTED;

2. Defendant District Attorney James Sacket's motion to dismiss is DENIED;

3. Defendants Governor Andrew M. Cuomo and Attorney General Eric Schneiderman's motion to dismiss is DENIED as moot;

4. Plaintiff Matthew Avitabile's motion for a preliminary injunction is DENIED;

5. Defendants Governor Andrew M. Cuomo and Attorney General Eric Schneiderman are DISMISSED as defendants pursuant to the parties' stipulation;

6. Plaintiffs Firearms Policy Coalition and Firearms Policy Foundation are DISMISSED by consent; and

    7. Defendant District Attorney James Sacket shall file and serve an ANSWER to the amended complaint on or before October 13, 2017.

    The Clerk of the Court is directed to amend the docket accordingly and to terminate all pending motions.

    IT IS SO ORDERED.

Dated: September 28, 2017
       Utica, New York.

_____
United States District Judge