UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MATTHEW AVITABILE,

                           *Plaintiff*,

       -against-                    1:16-CV-01447

SUPERINTENDENT GEORGE P. BEACH II,      (DNH)(CFH)
SUPERINTENDENT OF THE NEW YORK STATE
POLICE,

                           *Defendant*.

# DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT

                                      BARBARA D. UNDERWOOD
                                      Attorney General of the State of New York
                                      *Attorney for Superintendent George P. Beach II,*
                                      *Superintendent of the New York State Police*
                                      The Capitol
                                      Albany, NY 12224

MICHAEL G. McCARTIN
Assistant Attorney General
    *Of Counsel*
Bar Roll No. 511158
Telephone: (518) 776-2620

October 25, 2018

## **Table of Contents**

Preliminary Statement……………………………………………………………………………..1

Argument…………………………………………………………………………………………….1

    Point I       Even though electronic dart guns still appear not to be "in common use" across the United States, defendant hereby assumes that they are for the sake of argument……..……......……………………………………….…………1

    Point II      New York State's ban on electronic dart guns and stun guns does not violate the Second Amendment because, under Second Circuit precedent, plaintiff still has numerous other "adequate alternatives" in order to protect his home, including handguns, rifles, and shotguns – that can be loaded with lethal *and less-lethal ammunition* – in addition to other items, such as pepper spray, or even his baseball bat………………………..………………………………….3

    Point III     Intermediate scrutiny applies to this case and, under that standard of review, a law that burdens Second Amendment rights passes constitutional muster, as it does here, if it is substantially related to the achievement of an important governmental interest, *i.e*., public safety……………………………………….8

Conclusion…………………………………………………………………………………………..10

**Preliminary Statement**

Defendant George P. Beach II, the Superintendent of the New York State Police, hereby replies to Plaintiff Matthew Avitabile's opposition to defendant's cross-motion for summary judgment.  Defendant's cross-motion for summary judgment should be granted because, in accord with substantial Second Circuit precedent decided since *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010) were decided by the U.S. Supreme Court, plaintiff has adequate alternatives to use to protect his home – other than electronic dart guns and stun guns – including adequate, less-than-lethal alternatives.  That being true, plaintiff's Second Amendment rights have plainly not been violated.

**Argument**

**Point I**

**Even though electronic dart guns still appear not to be "in common use" across the United States, defendant hereby assumes that they are for the sake of argument.**

Based upon a stipulation between the parties, defendant properly asserted that there were 300,000 Tasers possessed by private citizens in the United States.  This stipulation between the parties was exhibited to the Court in *plaintiff's* Statement of Material Facts as follows: "Plaintiff and Defendant have stipulated that there are 300,000 Tasers … currently owned by private civilians in the United States of America."  Dkt. No. 52-1, ¶ 11.  However, in response to defendant's cross-motion for summary judgment, plaintiff has now asserted that Tasers are only one *brand* of electronic dart guns and that other electronic dart guns – like PhaZZer, which plaintiff refers to as Axon/Taser's leading U.S. competitor – make up another portion of the electronic dart gun market.  To advance this argument, plaintiff cites various websites that sell the PhaZZer, as well as other apparent Chinese and Russian brands of electronic dart guns.  *See* Plaintiff's Opposition Memo of Law, p. 6 of 19, fn 2.

Defendant admits that this argument would have merit to it if not for the fact that, in all reality, Axon/Taser holds a *virtual monopoly* in the electronic dart gun market in the United States. For instance, *Forbes* reports that Axon/Taser has approximately 95% of the market share in CEWs. *See* https://www.forbes.com/sites/lukeschiefelbein/2018/03/13/why-taser-stock-could-have-shocking-upside/#42dd8eb077d7. Other market reporters have found that "Taser International enjoys a virtual monopoly and has no noteworthy competition in the CEW space." https://seekingalpha.com/article/3969456-taser-international-tale-2-businesses. Still another report states: "Ever since 2003, when one of the two companies making Tasers bought out the other, there has effectively been a Taser monopoly. If you've ever seen a police officer carrying a Taser, that Taser was almost certainly manufactured by the publicly traded company formerly known as Taser International, now named Axon Enterprise, Inc." https://dsiac.org/resources/news/meet-company-trying-break-taser-monopoly. And this is not something that Axon/Taser has disputed because it has asserted in its own investor presentations that it has "no meaningful competition" in its "core CEW business." http://investor.axon.com/static-files/a75fcb14-e778-42b0-996c-493cc30d1e14, p. 3.

Nonetheless, because plaintiff made the argument that PhaZZer and other electronic dart gun products enjoy more of the market in the United States than they do in reality, and because this Court cannot simply take judicial notice of the sources cited above that show that this is simply not true, defendant believes that it is best to just assume for the sake of argument that electronic dart guns are "in common use." Defendant has chosen to make this concession because the second argument advanced in defendant's cross-motion for summary judgment – which was defendant's primary argument anyways – should still easily prevail with regard to *both* electronic dart guns and stun guns.

**Point II**

**New York State's ban on electronic dart guns and stun guns does not violate the Second Amendment because, under Second Circuit precedent, plaintiff still has numerous other "adequate alternatives" in order to protect his home, including handguns, rifles, and shotguns – that can be loaded with lethal *and less-lethal ammunition* – in addition to other items, such as pepper spray, or even his baseball bat.**

In this Court's decision on plaintiff's preliminary injunction motion, the Court noted that, when there are a "myriad other non-lethal or less-lethal devices that exist for in-home self-defense purposes", it is "hard to conclude … that the stun gun ban effectively disarms individuals or substantially affects their ability to defend themselves." Dkt. No. 38, p. 15 (citing *N.Y. State Rifle & Pistol Ass'n v. Cuomo,*, 804 F.3d 242, 260 (2d Cir. 2015)). As defendant pointed out in his cross-motion for summary judgment, this point is crucial in this case because, in the post-*Heller* and post-*McDonald* era, the Second Circuit has repeatedly found, as it did in *Decastro*, that a "law that regulates the availability of firearms is *not a substantial burden on the right to keep and bear arms if **adequate alternatives** remain for law-abiding citizens to acquire a firearm for self-defense.*" *United States v. Decastro*, 682 F.3d 160, 168 (2d Cir. 2012) (emphasis added). In *N.Y. State Rifle*, the Second Circuit underscored this point by stating that "[n]o substantial burden exists … if **adequate alternatives** remain for law-abiding citizens to acquire a firearm for self-defense." 804 F.3d at 259 (internal quotation marks omitted) (emphasis added). And just this year in *N.Y. State Rifle & Pistol Ass'n v. City of New York*, 883 F.3d 45 (2d Cir. 2018), the Second Circuit reiterated this same point by quoting the same language from *Decastro* that is quoted above, and then it cited a case from the Ninth Circuit that made the same point that the Second Circuit had made in *Decastro*. *Id*., at 60 (quoting *Nordyke v. King*, 644 F.3d 776, 787 (9th Cir. 2011), aff'd. en banc, 681 F.3d 1041 (9th Cir. 2012)).

3

This simple rule of law is dispositive here because plaintiff plainly has "adequate alternatives" at his disposal – that is, handguns, rifles, and shotguns – all of which can be lawfully purchased by him in New York State to protect his home. In fact, plaintiff presently owns three (3) rifles and a .12 gauge, pump-action shotgun. Plaintiff's Depo., pp. 13-14. Plaintiff already has lethal ammunition for these four (4) firearms, and he testified that he would indeed use that lethal ammunition to defend his home if the need arose. *Id.*, p. 15. Again, as was held in *Decastro*, a "law that regulates the availability of firearms" – in this case the Court can substitute electronic dart guns and stuns guns for the word "fiearms" – "is *not a substantial burden on the right to keep and bear arms if **adequate alternatives** remain for law-abiding citizens to acquire a **firearm** for self-defense.*" *Decastro*, 682 F.3d at 168 (emphasis added). Not only *can* plaintiff still "acquire a firearm for self-defense", he has already done so – *four times*.

To the extent that plaintiff still wants a less-lethal way to defend his home, the evidence in the record now establishes as a proven fact that plaintiff can purchase less-lethal ammunition for his .12 gauge, pump action shotgun. *See* Plaintiff's Depo. Exhibits, A, B and C. Plaintiff also made what defendant asserts is a *case-ending admission* in his deposition. Again, as noted in defendant's opening brief, after plaintiff was shown two short videos depicting the use of less-lethal ammunition, *id.*, pp. 29-30, Exhibit B, plaintiff testified as follows:

> Q: Okay. I just have a few questions for you to follow up on those videos. It seems to me that you have a – a goal in mind in this – in defending your home. One is to minimize the likelihood that you would use deadly force if someone were to break into your home, for instance. **Would you agree with me that the forms of non – or less lethal ammunition that you've seen in the videos there would be one <u>alternative means</u> of achieving that goal?**
>
> A: Based upon what I saw, I think that it – in certain circumstances, **it could be.**

*Id.*, p. 30 (emphasis added). So plaintiff effectively admitted that less-lethal ammunition is an

4

"alternative means of achieving [his] goal" to "minimize" the "use of deadly force" in defending his home. *Id.* Again, under *Decastro* and the Second Circuit cases that followed it, this admission means that plaintiff has undermined his whole case with his own testimony.

Yet, now through his counsel and without any declaration from him, plaintiff makes the contrary argument that a .12 gauge shotgun loaded with less-lethal ammunition is not actually an adequate alternative to a Taser or a stun gun because the police chief on the *second video* of Exhibit B of Plaintiff's Deposition, who was demonstrating the less-lethal weapon, was wearing ear and eye protection when he fired that weapon. Plaintiff's Opposition Memo of Law, p. 11 of 19. Defendant asserts that this new-found argument is meritless because the *first video* of Exhibit B shows a police officer demonstrating the exact same type of less-lethal weapon *without* wearing any ear or eye protection. And apparently shooting a firearm – and enduring its noise – is not new to this plaintiff because, at least once or twice a year, plaintiff practices shooting his firearms. Plaintiff's Depo. pp. 14-15.

On page 12 of 19 of his brief, in further arguing that less-lethal ammunition is not an adequate alternative to a Taser, plaintiff next cites Exhibit C of Plaintiff's Deposition, which warns: "ALL LESS LETHAL AMMO HAS THE POTENTIAL TO BE FATAL." Dkt. No. 58-6. This is true, of course, but the same is true of a Taser, as Axon/Taser warns all citizens who buy its product: "CAN CAUSE DEATH OR SERIOUS INJURY." Dkt. No. 58-10. Further, despite being aware of the potential for lethality with less-lethal ammunition, plaintiff still testified as follows:

> Q: Just to be clear, despite the warning that less lethal ammunition can still be lethal, you would consider using it to defend your home?
>
> A: Yes, I would consider it.

Plaintiff's Depo., p. 40. So plaintiff's new-found argument on this point is also meritless.

5

Plaintiff next cites a particular type of less-lethal ammunition from Exhibit C of Plaintiff's Deposition – the "Beehive" – asserting, again, without a declaration from plaintiff, that plaintiff would not want to use that ammunition because it looks like – and thus, *might* perform like – buckshot, spreading out and perhaps injuring an eye of a potential assailant. *See* Plaintiff's Opposition Memo of Law, p. 12 of 19. That plaintiff prefers not to use this particular type of less-lethal ammunition is absolutely *irrelevant* because, as noted above, he has already conceded that he *would* use "beanbag" rounds of less-lethal ammunition, the type of which are found on page 2 of Exhibit C. The less-lethal beanbag ammunition is referred to as the "Hammer" and it is described as a "ballistic bag with stabilizing tails filled with tiny shot[,] forms an extremely accurate 'bean bag'. Great for LESS-LETHAL power in the most threatening situations, effective up to 30 yards!" Dkt. No. 58-6, p. 2 (caps in the original). Quite frankly, the beanbag round loaded into a .12 gauge shotgun is an adequate alternative to the Taser, as plaintiff himself conceded in his deposition after watching the two videos on Exhibit B. *See* Plaintiff's Depo., Exhibit B, p. 30.

Nonetheless, plaintiff next argues that a shotgun or rifle loaded with less-lethal ammunition is not as "portable" or "maneuverable" as a Taser or stun gun, so it is not an adequate alternative. Plaintiff's Opposition Memo of Law, p. 13 of 19. But plaintiff readily admitted during his deposition that *there are less-lethal forms of ammunition **for handguns***, too:

> Q: Are you aware that there are less lethal forms of ammunition for, for instance, handguns, forty-five-caliber handguns?
>
> A: Yes.
>
> Q: You are aware of that?
>
> A: Uh-huh.
>
> Q: Would you ever consider trying to get a pistol permit in New York and trying to get a less lethal form of ammunition for that pistol?

6

> A: **I'm not saying that it wouldn't happen,** but if I'm not going to get a pistol permit under the – the circumstances right now, that would be one more barrier or one more step beyond my – where I sit now. That if I already don't want one and I would get it for something less lethal, the chance of me doing it is pretty low.

Plaintiff's Depo., p. 52 (emphasis added). If plaintiff *really* wants a more "portable" or "maneuverable" form of a less-lethal weapon to defend his home, he can, as an adequate alternative to an electronic dart gun or stun gun, go and get a pistol permit and load his pistol with less-lethal ammunition. Thus, plaintiff's argument on this point also fails.

Even setting aside the consideration of less-lethal forms of ammunition, plaintiff still has pepper spray available as another adequate alternative to use instead of an electronic dart gun or stun gun – and this is in spite of the fact that plaintiff testified that he has given pepper spray "no serious consideration." Plaintiff's Depo., p. 26. In his opposition brief, plaintiff now asserts, "[t]o put it simply," pepper spray in New York State "is a watered-down version of what is available in other states and is inadequate." Plaintiff's Opposition Memo of Law, p. 10 of 19. Plaintiff relies upon the expert report of Robert Nance of Sabre, Inc., to make this assertion, but, as was noted in defendant's opening papers, Sabre's own website discounts this assertion when it clearly states: "Some brands hope you believe a higher OC percentage means a more effective spray. But this number only measures the amount of pepper within the spray, not the heat strength or effectiveness." *See* Dkt. No. 58-11, p. 1. So, despite plaintiff's arguments about pepper spray not being effective in New York State – supposedly because of its lower OC percentage – Sabre's own website completely undermines this claim. *Id.* And, to the contrary, defendant's expert witness, N.Y.S. Trooper Philip Shappy, asserts that pepper spray is a far better form of self-defense for a civilian than is a Taser or stun gun. Dkt. No. 58-12, ¶¶ 18-21.

In sum, not only is less-lethal ammunition an adequate alternative means of less-lethal self-defense of the home, but so is pepper spray. And, for that matter, so is the baseball bat that

plaintiff admits that he owns and would use in order to defend himself and his home. Plaintiff's Depo., p. 24. Thus, under *Decastro* and the cases of the Second Circuit that followed its "adequate alternatives" holding, New York State's ban on electronic dart guns and stun guns is not a substantial burden on the right to keep and bear arms.

### Point III

**Intermediate scrutiny applies to this case and, under that standard of review, a law that burdens Second Amendment rights passes constitutional muster, as it does here, if it is substantially related to the achievement of an important governmental interest, *i.e.*, public safety.**

This Court held as follows in its decision on the preliminary injunction motion: "[T]he Second Circuit concluded intermediate scrutiny was appropriate where the gun-control legislation at issue left open numerous alternative ways for a citizen to lawfully acquire and possess a weapon for self-defense." *See* Dkt. No. 38, p. 12 (citing *N.Y. Rifle*, 804 F.3d at 260). As is shown in Point II above, that is true here, thus, intermediate scrutiny squarely applies. *See also Mishtaku v. Espada*, 669 Fed. Appx. 35, 35-36 (2d Cir. 2016) ("We apply intermediate scrutiny to laws implicating the Second Amendment.") (omits internal quotation).

Since intermediate scrutiny applies here, that means that "New York's law need only be substantially related to the state's important public safety interest" and a "perfect fit between the means and the governmental objective is not required." *Kachalsky v. County of Westchester*, 701 F.3d 81, 98 (2d Cir. 2012). Thus, in the Second Circuit, under this intermediate scrutiny test, "a regulation that burdens a plaintiff's Second Amendment rights passes constitutional muster if it is substantially related to the achievement of an important governmental interest." *Kwong v. Bloomberg*, 723 F.3d 160, 168 (2d Cir. 2013). On this point, "New York has substantial, indeed compelling, governmental interests in public safety and crime prevention." *Id*. (omits internal quotations).

8

With that stated, this Court need only decide whether the New York State Legislature could have reasonably determined that electronic dart guns and stun guns are dangerous weapons that could adversely impact the public safety of New Yorkers. And the evidence in the record clearly supports such a conclusion. In fact, Axon/Taser itself warns of the risks of serious injury and death associated with the use of its CEW products. *See Williams v. City of Cleveland*, 736 F.3d 684, 687 (5th Cir. 2013) ("Taser's product warnings explicitly and repeatedly warned of the risks of serious injury and death ..."). The Axon/Taser warnings in evidence in this case show that this is still true. Indeed, in an SEC Form 10-K filing from March of 2018, Axon/Taser admitted the following: "Our CEW [Taser] products are often used in aggressive confrontations that may result in **serious, permanent bodily injury or death to those involved. Our CEW products may be associated with these injuries.**" Plaintiff's Depo., Exhibits D and E. Furthermore, Axon/Taser's warnings for civilians plainly state that Tasers **"[c]an cause death or serious injury**." Dkt. No. 58-10, p. 1 (emphasis added). *See also United States v. Quiver*, 805 F.3d 1269, 1272 (10th Cir. 2015) ("We conclude that a Taser … is a dangerous weapon. In either drive-stun or probe mode, a Taser is capable of inflicting … serious bodily injury …") (omits internal quotations). And, as was previously noted, the Second Circuit and New York State courts have likewise referred to stun guns as "dangerous" weapons. *See United States v. Agron*, 921 F.2d 25 (2d Cir. 1990) (holding that the stun gun used in the commission of the crime enhanced the sentence under the United States Sentencing Guidelines' "dangerous weapon" provision); *People v. MacCary*, 173 A.D.2d 646, 647 (2d Dep't 1991) (holding that there was "ample basis" to conclude that a stun gun was a "dangerous instrument").

Since "New York has substantial, indeed compelling, governmental interests in public safety", *Kwong*, 723 F.3d at 168 (omits internal quotations), and since electronic dart guns and stun guns are inherently dangerous under clear and compelling case law – as well as other

9

evidence in the record – there is no doubt that the New York State Legislature was properly permitted to ban these items in order to advance its commendable public safety goals.

The Second Circuit's words are key here and they warrant repeating from defendant's opening brief: "In the context of firearm regulation, the legislature is far better equipped than the judiciary to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks." *Kachalsky*, 701 F.3d at 97. The New York State Legislature made just such a public policy judgment here about electronic dart guns and stun guns, and this judgment should be upheld by this Court.

## Conclusion

The Court should grant defendant's cross-motion for summary judgment. In accordance with Second Circuit precedent since *Heller* and *McDonald*, plaintiff has adequate alternatives to protect his home – in a lethal and less-than-lethal way – thus, the Second Amendment has not been violated.

Dated:  Albany, New York
        October 25, 2018

                                        BARBARA D. UNDERWOOD
                                        Attorney General of the State of New York
                                        *Attorney for Superintendent George P. Beach II,*
                                        *Superintendent of the New York State Police*
                                        The Capitol
                                        Albany, NY 12224

                                        s/ *Michael McCartin*
                                        Michael G. McCartin
                                        Assistant Attorney General, *Of Counsel*
                                        Bar Roll No. 511158
                                        (518) 776-2620
                                        michael.mccartin@ag.ny.gov

TO:    Stephen D. Stamboulieh, Esq.
          Alan Alexander Beck, Esq.
          *Attorneys for Plaintiff*